IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Petitioner, | |
| v. | Misc. No. |
| FULLY ACCOUNTABLE, LLC, and | **5:19 MC 21** |
| SARAH SCAVA, | |
| Respondents. | |

**FEDERAL TRADE COMMISSION'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PETITION TO ENFORCE CIVIL
INVESTIGATIVE DEMANDS**

The Federal Trade Commission brought this proceeding to enforce civil

investigative demands (CIDs) seeking testimony from Fully Accountable, LLC, and

Sarah Scava, a former employee, as part of its ongoing investigation into whether

Fully Accountable and related persons and entities may be engaged in acts or

practices that violate the FTC Act.

This is not the first time the Commission has had to sue Fully Accountable to

compel it to comply with process. Earlier this year, the Commission filed a similar

enforcement proceeding against the company after it failed to comply with a CID

seeking documents and interrogatory responses. *See FTC v. Fully Accountable,*

*LLC*, No. 5:18-mc-00054-SL (N.D. Ohio filed June 8, 2018) [hereinafter *"Fully*

*Accountable I"*]. The Commission prevailed when, after proceedings before

Magistrate Judge George Limbert, the Court issued an order enforcing the FTC's

CID and requiring Fully Accountable to produce all responsive information.

Fully Accountable's production to the FTC in connection with the *Fully*

*Accountable I* enforcement order contained numerous deficiencies and

inconsistencies. After prompting the FTC, the company provided corrected or

expanded supplemental responses to several specifications. To determine whether

Fully Accountable had fully complied as directed, and to move the investigation

forward, the Commission issued the two CIDs for testimony that are at issue in this

proceeding.

Neither recipient has complied. Instead, both CIDs have been the subject of

failed challenges. For Fully Accountable's CID, the company itself petitioned the

Commission to limit or quash ("petition to quash") the CID. For Sarah Scava, a non-

party called Elevated Health LLC filed a similar petition to quash. After detailed

review, the Commission denied both petitions in a reasoned, 7-page opinion and

ordered both Fully Accountable and Ms. Scava to comply.

They refused. Instead, Fully Accountable filed a "Petition to Enforce Petition

to Quash or Limit" in *Fully Accountable I*. This filing raises a preenforcement

challenge to the Commission's CIDs, effectively asking the Court to overturn the

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil
Investigative Demands

Commission and quash the CIDs. As the Commission explains in its opposition papers filed in that case, that challenge is procedurally improper and thus invalid on its face. Instead, the Court can decide these issues only as part of enforcement proceedings brought by the Commission, which this instant proceeding is.

Pending resolution of Fully Accountable's preenforcement challenge, Respondents state they will not comply with the CIDs. Because Respondents' refusal impedes the FTC investigation, the Commission therefore respectfully asks this Court to grant the Commission's enforcement petition and to direct Fully Accountable and Sarah Scava to appear and provide testimony on the specified topics within 10 days from the date of the Court's order.

## I.   Factual Background

### A.    The FTC's Investigation

This case arises from an ongoing FTC investigation and a related CID enforcement proceeding. *See Fully Accountable I*.[1] In 2017, the Commission commenced an investigation of Fully Accountable and related individuals and entities, examining "back office" services it provided to two groups of companies. Pet. Ex. 1, ¶¶ 3, 5-6. The first group, called the "Group A Entities," consisted of a collection of firms that marketed various health-related supplements online. *Id.*, ¶ 5. The second, called the "Group B Entities," consisted of a series of businesses that also engaged in online marketing of consumer products and that appeared to be related to each other and to Fully Accountable. *Id.*, ¶ 6. The Commission's

---

[1]    The Commission is filing a notice of related case identifying this matter.

investigation focused on Fully Accountable's role as a provider of services to these groups in connection with their activities in marketing products and charging consumers. *Id.*, ¶¶ 5-6.

As part of this investigation, the Commission issued a CID to Fully Accountable on September 21, 2017. *Id.*, ¶ 7. That CID was authorized by no fewer than three separate Commission resolutions, including (1) a resolution addressing false or misleading advertising of health-related products; (2) a resolution addressing online marketing and sales; and (3) a resolution addressing charging consumers without authorization. *Id.*, ¶¶ 8-10; *Fully Accountable* I, Doc. 1-2 at 21-23.[2] In addition, the CID itself included a "Subject of Investigation" notice that summarized the authority afforded by these resolutions and applied it to Fully Accountable. This "Subject of Investigation" stated that the Commission was investigating

> [w]hether Fully Accountable, the Group A Entities, or the Group B Entities . . . and related entities or individuals, have made or participated in making, in any respect, false, misleading, or unsubstantiated representations in connection with the marketing of consumer products, in violation of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45 and 52, or have engaged in deceptive or unfair acts or practices by charging or participating in the charging, in any respect, for consumer products without consumers' authorization, in violation of Section 5 of the FTC Act, and whether Commission action to obtain monetary relief would be in the public interest.

*Fully Accountable* I, Doc. 1-2 at 7.

---

[2]     Citations to docket entries are to page numbers in ECF-added headers.

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

**B.** **The 2018 Enforcement Proceeding (*Fully Accountable I*)**

Fully Accountable did not comply with the September 2017 CID, despite multiple conversations and exchanges of correspondence with staff, including a modification of the CID's deadlines at Fully Accountable's request. Although the company produced some limited interrogatory responses, it produced no documents whatsoever, refused to answer other interrogatories, and withheld information based on spurious claims of confidentiality. Pet. Ex. 1, ¶ 11; *Fully Accountable I*, Doc. 1-1, Att. 1.

Accordingly, on June 8, 2018, the Commission instituted in this Court a proceeding to enforce the CID. Pet. Ex. 1, ¶ 11; *Fully Accountable I*, Doc. 1 *et seq.* That proceeding resulted in an Order by Judge Lioi enforcing the CID and directing Fully Accountable to comply in full by August 23, 2018. *Fully Accountable I*, Doc. 14. Fully Accountable did not file any legal objection or opposition to the Commission's petition or to the Court's order at any point in that proceeding. Pet. Ex. 1, ¶ 12.

Fully Accountable produced additional information to the Commission as a result of the proceeding, and on August 23, 2018, provided a certificate claiming it had complied in full with the CID. Pet. Ex. 1, ¶ 13.

## C.    The 2018 CIDs For Testimony

FTC staff has identified several deficiencies and inconsistencies in this production. Pet. Ex. 1, ¶ 14.[3] These include, but are not limited to, the following:



---

[3]     See the Declaration of Harris Senturia dated February 1, 2019, Pet. Ex. 1, for a more detailed discussion of the deficiencies and inconsistencies identified.

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands



Faced with these and other deficiencies and inconsistencies, the FTC

therefore needed to assess if Fully Accountable had indeed complied with the

Court's Order. The FTC also sought to move the investigation forward by gathering

additional evidence. To accomplish these aims, on September 10, 2018, the

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil
Investigative Demands

Commission issued two additional CIDs seeking only testimony – one to Fully Accountable for testimony from the entity and one to Sarah Scava, a person the FTC identified as a former employee of Fully Accountable, for testimony based on her personal knowledge. Pet. Ex. 1, ¶¶ 15, 19.

### D. The Petitions To Limit Or Quash

Neither Fully Accountable nor Ms. Scava complied with these CIDs. Instead, on October 5, 2018, Fully Accountable filed with the Commission a petition to quash the CID it received. Pet. Ex. 4; Pet. Ex. 1, ¶ 26. That same day, Elevated Health, a non-party, filed with the Commission a similar petition to quash the CID directed to Ms. Scava. Pet. Ex. 5; Pet. Ex. 1, ¶ 27.

In its petition to quash, Fully Accountable first objected to CID specifications 6 and 7 asking for testimony about the company's relationship with Elevated Health and with Ms. Scava. Fully Accountable claimed that neither of these were included among Fully Accountable, the Group A Entities or Group B Entities, or persons related thereto, and thus the specifications called for irrelevant information outside of the scope of the investigation. Pet. Ex. 4 at 5-6. Fully Accountable then challenged specifications 3, 4, and 5 that called for, respectively, testimony regarding Fully Accountable's efforts to comply with the original 2017 CID, its efforts to prevent the disposal of information potentially responsive to that CID, and its records management systems, particularly for electronically-stored information. Fully Accountable claimed that it has already provided this information and that this was outside of the scope of the investigation and irrelevant. *Id.* at 7. Finally,

Fully Accountable claimed that specifications 1 and 2, which called for testimony about the interrogatories and documents it produced in response to the original CID, were burdensome because they were duplicative to its production. *Id.* at 8-9.

The CID to Sarah Scava included 13 specifications that sought testimony on subjects including, but not limited to, Ms. Scava's work with Fully Accountable; the formation and business of Elevated Health; the relationship between Fully Accountable and Elevated Health; the relationships between Elevated Health and several other relevant entities; the relationships among Ms. Scava, Elevated Health, and the principals and managers of Fully Accountable; and any work Ms. Scava performed for the Group A Entities and Group B Entities. Pet. Ex. 3 at 6-7.

Elevated Health's petition to quash this CID raised multiple objections to each specification. These claims can be grouped into three basic challenges: (1) the CID was unreasonable because Ms. Scava was no longer involved with Elevated Health; (2) the CID called for information about entities and individuals that were outside of the scope of the investigation and thus irrelevant; and (3) the CID's request for in-person testimony was burdensome and Ms. Scava should be permitted to respond through written answers to the Commission's questions. Pet. Ex. 5 at 10-17.

### E.    The Commission's Order

By order dated November 19, 2018, the Commission denied both petitions. Pet. Ex. 6; Pet. Ex. 1, ¶ 28. First, under the broad and relaxed standard for relevance in administrative investigations, the Commission rejected Fully

Accountable's claim that the requests for testimony from the company about Sarah Scava and Elevated Health were irrelevant to the investigation. Pet. Ex. 6 at 4. As the Commission held, "Specifications 6 and 7 plainly and obviously relate to the FTC's investigation into Fully Accountable and its relationships with its clients, affiliates, and related companies and individuals." *Id.* The Commission also found no merit in Fully Accountable's objections to specifications 3, 4, and 5 exploring the company's response to the original CID and its document management processes. The Commission found these relevant to the investigation, "particular[ly] . . . where Fully Accountable's responses to the earlier CID made its own document management a key issue and required the Commission to seek judicial intervention." *Id.* at 4-5. The Commission continued, "Indeed, the procedures that a company has adopted – or failed to adopt – in documenting its business practices as well as its efforts to respond to process are relevant in *any* investigation." *Id.* at 5 (emphasis in original). Finally, the Commission rejected the claim that specifications 1 and 2 created an undue burden to Fully Accountable. It found that the company provided no such support for any claim of undue burden, and even so, the practical advantages to the Commission of obtaining such testimony outweighed any burden. *Id.* at 5-6.

Turning to Elevated Health's petition, the Commission determined that this petition—filed by an admitted non-party—was not properly before the Commission. Applying the relevant provision of the FTC Act, the Commission found no right by a non-recipient of process to file such a petition. *Id.* at 6. The Commission also held

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

that Elevated Health's petition failed to comply with two of the Commission's rules of practice, either of which provided sufficient grounds to deny review. *Id.* Even so, the Commission reviewed the substance of Elevated Health's claims but found them to lack any merit. The Commission ruled that the topics in the CID to Ms. Scava were relevant to the investigation, that it was entirely proper to seek testimony from an entity's former employee, and finally, that the Commission was "well within its rights" to pursue testimony in lieu of written responses. *Id.* at 7.

Accordingly, the Commission denied both petitions. It directed Ms. Scava to appear for testimony on November 29, 2018, and Fully Accountable to appear the following day, November 30, 2018.[4] *Id.* By email dated November 28, counsel for Ms. Scava and Fully Accountable informed FTC staff of its filing in *Fully Accountable I*, *see* Doc. 21, and further confirmed that neither would appear as ordered: "At this time we will not be scheduling a hearing for Sarah Scava or Fully Accountable until the determination is made by the Court." Pet. Ex. 7 at 1.

## II.    Argument

For the reasons shown below, the Commission is entitled to judicial enforcement of its CIDs. The Commission's CIDs unequivocally meet the test for enforcement of process established by the Supreme Court in cases such as *United States v. Morton Salt Co.*, 338 U.S. 632 (1950) and by the Sixth Circuit in cases such

---

[4]    The Commission's Order granted its staff the flexibility to modify the date, time, and location of testimony. Pet. Ex. 6 at 7. By email dated November 26, counsel for Fully Accountable and Sarah Scava requested modifications to the dates. Commission staff immediately agreed to work on negotiating new dates, to no avail. Pet. Ex. 1, ¶ 29; Pet. Ex. 7 at 1-2.

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

as *Doe v. United States,* 253 F.3d 256 (6th Cir. 2001). None of the claims raised by Fully Accountable or non-party Elevated Health call into question the Commission's order or provide any basis to deny enforcement. Accordingly, this Court should grant the Commission's petition to enforce the CIDs and enter an order requiring Fully Accountable and Ms. Scava to appear and provide testimony on the specified topics within 10 days. *See* 15 U.S.C. § 57b-1(h)

### A.  The Standards For Enforcement Of Agency Process Require Enforcement Of The FTC's 2018 CIDs.

"[A] district court's role in the enforcement of an administrative subpoena is a limited one." *United States v. Markwood,* 48 F.3d 969, 976-77 (6th Cir. 1995) (discussing, *inter alia, Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209 (1946) and *United States v. Morton Salt Co.,* 338 U.S. 632, 652-53 (1950)). "[W]hile the court's function is 'neither minor nor ministerial,' the scope of the issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *Markwood,* 48 F.3d at 979 (quoting *FTC v. Texaco, Inc.,* 555 F.2d 862, 872-73 (D.C. Cir. 1977) (*en banc*)) (citations omitted); *accord Doe v. United States,* 253 F.3d 256, 262-63 (6th Cir. 2001); *FTC v. Winters Nat'l Bank & Trust Co.,* 601 F.2d 395, 403 (6th Cir. 1979) (noting "the strong policy upholding the validity of the exercise of" the FTC's subpoena powers).

Thus, a district court must enforce agency investigative process so long as the inquiry "'is within the authority of the agency, the demand is not too indefinite and

the information sought is reasonably relevant.' In other words, the agency request must be reasonable." *See Doe*, 253 F.3d at 263 (quoting *Morton Salt*, 338 U.S. at 652-53) (internal quotation marks omitted); *accord Winters Nat'l Bank*, 601 F.2d at 398.

The CIDs at issue satisfy all the standards governing enforcement of FTC compulsory process. They are well within the Commission's authority, were properly issued, seek information relevant to the Commission's investigation, and are neither indefinite nor unreasonable.

### 1.    The CIDs Are Within The Commission's Authority.

The Commission lawfully and properly issued the CIDs at issue as part of an investigation into whether Fully Accountable and associated entities and individuals have violated the FTC Act. The Commission issued the CIDs under Section 20 of the FTC Act, 15 U.S.C. § 57b-1, which authorizes the Commission to issue CIDs "[w]henever the Commission has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to unfair or deceptive acts or practices." 15 U.S.C. § 57b-1(c)(1). The Commission acted under valid agency resolutions authorizing the issuance of compulsory process to investigate the very types of conduct at issue here. Pet. Ex. 1, ¶¶ 8-10, 21. Finally, the Commission issued and served the CIDs consistent with all governing requirements. *Id.* at 22; *see also* 15 U.S.C. §§ 57b-1(c)(2), (c)(6), (c)(7), (c)(8), (c)(9); 16 C.F.R. §§ 2.7, 4.4(a)(3).

### 2. The Information Sought Is Relevant To The Commission's Investigation.

The purpose of an FTC investigation is to learn whether there is reason to believe that the law has been, or is being, violated and, if so, whether the issuance of a complaint would be in the public interest. Indeed, the FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Texaco*, 555 F.2d at 872 (quoting *Morton Salt*, 338 U.S. at 642-43). A CID is not limited to seeking information necessary to prove specific charges; to the contrary, a CID is held to a more "relaxed" standard and may call for documents and information that are relevant "to the investigation"— a boundary that may be broadly and "generally" defined by the agency. *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992).

The resolutions in this case are consistent with other FTC resolutions that provide a general description of the conduct at issue against which to measure relevance. *See id.* at 1088, 1090 (finding sufficient for relevance purposes a resolution authorizing investigation of "false or misleading representations made in connection with the advertising, offering for sale and sale of services related to the promotion of inventions or ideas.").[5] Collectively, they enable the Commission to use

---

[5]     *Accord FTC v. Carter*, 636 F.2d 781, 784, 787-88 (D.C. Cir. 1980) (finding sufficient a resolution authorizing investigation of "unfair or deceptive acts or practices . . . in the advertising, promotion, offering for sale, sale, or distribution of cigarettes"); *Texaco*, 555 F.2d at 868, 874-76 & n.26 (finding sufficient a resolution authorizing investigation of reporting of natural gas reserves in southern Louisiana as well as the conduct "relating to the exploration and development, production, or

process to investigate false or misleading advertising, online marketing, and unfair charging of consumers without authorization. Pet. Ex. 1, ¶ 8-10; Pet. Ex. 2 at 9-11; Pet. Ex. 3 at 10-12. Further, each of the resolutions provides for the issuance of process to "unnamed persons, partnerships, corporations," a phrase the Commission uses to empower staff to investigate targets whose identities may not be known at the outset of an investigation or who may be identified during the course of an investigation. Pet. Ex. 2 at 9-11; Pet. Ex. 3 at 10-12.

The Commission's authority and the scope of the investigation as it applied to Fully Accountable was then summarized in a "Subject of Investigation" statement provided in each CID. That statement informed Fully Accountable and Ms. Scava that the Commission was investigating "[w]hether Fully Accountable, the Group A Entities, or the Group B Entities . . . *and related entities or individuals*" have engaged in conduct in violation of Sections 5 or 12 of the FTC Act. Pet. Ex. 2 at 5; Pet. Ex. 3 at 5 (emphasis added).

The information sought by the CIDs is directly relevant to the three investigational resolutions and thus to the Commission's investigation. For example, specifications 6 and 7 in the CID to Fully Accountable seeking information about the company's relationships with Ms. Scava or Elevated Health plainly relate to the investigation of "related entities or individuals," in the words of the Subject of Investigation, or the "unnamed persons, partnerships, or corporations" described in

---

marketing of natural gas, petroleum, and petroleum products, and other fossil fuels").

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

each of the resolutions. Pet. Ex. 1, ¶ 18. The remaining specifications in that CID also relate "to the investigation" because they explore whether Fully Accountable complied sufficiently with both the Commission's original CID and this Court's order by producing the information requested, or whether the company failed to produce or preserve potentially responsive information. Pet. Ex. 1, ¶ 17. Indeed, as the Commission held, information about a party's compliance with document production and preservation obligations would be relevant to *any* investigation. Pet. Ex. 6 at 5.

The CID to Ms. Scava is similarly relevant to the present investigation. The various specifications in that CID explore Ms. Scava's knowledge about Fully Accountable and Elevated Health and the relationships between and among Ms. Scava, these entities, and other companies and individuals connected to Fully Accountable. Pet. Ex. 1, ¶ 20. As such, these plainly relate to the "Subject of Investigation" and the three authorizing resolutions.

### 3. The CIDs Are Neither Indefinite Nor Unreasonable.

A CID is sufficiently definite when it describes the required information such "that a person can in good faith understand which documents must be produced." *RTC v. Greif*, 906 F. Supp. 1446, 1452 (D. Kan. 1995) (citing *In re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir.1979)); *cf.* 15 U.S.C. § 57b-1(c)(3)(A) (FTC CIDs for documents must identify the material to be produced "with such definiteness and certainty as to permit such material to be fairly identified."). The CIDs here

meet this definition because all of their specifications and definitions are plainly expressed and easily understandable. *Cf.* Pet. Ex. 2 at 6; Pet. Ex. 3 at 6-7.

The CIDs are also reasonable. Typically, reasonableness in this context refers to providing a reasonable time to respond. *See* 15 U.S.C. § 57b-1(c)(3)(B). Here, the CIDs were issued on September 10, 2018 with a return dates of October 11 (for Ms. Scava) and October 12 (for Fully Accountable), thus providing more than 30 days to prepare and respond. Pet. Ex. 2 at 3; Pet. Ex. 3 at 3. FTC staff further attempted to accommodate both recipients by communicating their counsel to discuss dates and times for testimony. Pet. Ex. 1, ¶¶ 23-25. Indeed, in response to an expressed concern that Ms. Scava's appearance for testimony was inconvenient, FTC staff offered to conduct the hearing on a Saturday and at a location closer to Ms. Scava. Pet. Ex. 1, ¶ 25. Ms. Scava rejected this offer.

* * *

For these reasons alone, this Court can and should enforce the Commission's CIDs. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)); *Doe v. United States*, 253 F.3d 256, 262-63 (6th Cir. 2001).

### B.    Fully Accountable Has Improperly Withheld Responsive Information.

As the Commission already concluded, Fully Accountable's excuses for its failure to appear and provide the requested testimony are meritless. These fall into three categories: that specifications 6 and 7 call for information outside of the scope of the Commission's investigation; that specifications 3, 4, and 5 are duplicative and

also call for irrelevant information; and that specifications 1 and 2 are duplicative and therefore unduly burdensome. Fully Accountable is wrong on each count for the reasons we discuss below.

### 1. Specifications 6 And 7 Seek Relevant Information Within The Scope Of The Investigation.

As discussed above, the standard for assessing relevance in an administrative investigation is "general[]," "relaxed," and more flexible than in civil litigation. A request for information need only relate "to the investigation" to be sufficiently relevant. *Invention Submission Corp.*, 965 F.2d at 1090.

Fully Accountable's claims that specifications 6 and 7 are irrelevant and outside of the scope of the FTC's investigation are incorrect. Pet. Ex. 4 at 5-6. These specifications, which ask Fully Accountable to testify about its relationships with Elevated Health and Ms. Scava, plainly relate "to the investigation." Pet. Ex. 1, ¶ 18. As discussed in the "Subject of Investigation" statement included with the CID, the FTC's investigation extends to not only the Group A Entities and Group B Entities, but also to "related entities and individuals." Pet. Ex. 2 at 5-6. Identifying such "related entities and individuals"—and whether they include Elevated Health, Ms. Scava, or some other as-yet-unidentified person or corporation—thus falls well within the scope of the investigation. It also falls well within the supporting investigational resolutions, each of which authorizes process to determine whether "unnamed persons, partnerships, or corporations" may have engaged in various potential law violations. *See, e.g.,* Pet. Ex. 2 at 9-11.

2.    **Specifications 3, 4, And 5 Are Within The Scope Of The Investigation And Not Duplicative.**

Specification 3 asks Fully Accountable to testify about the efforts it made to respond to the Commission's original 2017 CID. Specification 4 asks the company for information about its disposal of information potentially responsive to that CID. And specification 5 asks the company for testimony about its records management systems. Thus these specifications collectively seek to assess Fully Accountable's compliance with the Commission's original 2017 CID as well as this Court's Order enforcing that CID. Pet. Ex. 1, ¶ 17. Fully Accountable resists these specifications, claiming that they call for information outside the scope of the investigation and that the company has already produced this information in its responses to the original 2017 CID. Pet. Ex. 4 at 7. Fully Accountable also objects particularly to specification 5, which it claims impermissibly investigates its "business practices as a whole." *Id.*

These objections are without merit. These specifications relate directly "to the investigation" and thus are sufficiently relevant. The facts that a company may not have conducted a diligent search in response to receiving a CID, that it disposed of potentially responsive information, or that it lacks a records management system capable of identifying responsive information all bear on the fundamental question of whether the company has provided the information deemed necessary by the Commission for its inquiry. That is why the Commission ruled that such information would be relevant "to *any* investigation." Pet. Ex. 6 at 5.

Nor does Fully Accountable's document production render testimony from the entity on the same or similar issues duplicative. The use of testimony to explore the meaning of a document produced is well established and widely accepted. Indeed, in a similar context, one court rejected a claim like Fully Accountable's here:

> Similarly, the availability of an informative document, specifically the quality control manual, is not the equivalent of corporate testimony regarding the subject matter of that document. To illustrate, a document can be given differing significance and meaning by different witnesses, but the testimony of a [designated witness] binds the corporation to the explanation given. Moreover, the document at issue here, a manual, would only provide information as to instructions, guidelines, and policies, and not, for example, information about how those instructions, guidelines, and policies have been implemented. *Additional corporate testimony on M & T's quality control process, therefore, would not be duplicative of previous discovery.*

*United States ex rel. Fago v. M&T Mort. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006) (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003)) (citations omitted; emphasis added).[6] *Accord Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored."). This same reasoning applies here; indeed, the ability to seek testimony to further develop and understand a document production is precisely what the Commission meant in its opinion when it stated that staff should be permitted "latitude in

---

[6]     The cited case interprets Fed. R. Civ. P. 30(b)(6), which provides for deposition of an entity in civil litigation. The CID issued to Fully Accountable similarly sought testimony from the entity pursuant to the Commission's own rules of practice for investigations, here, rule 2.7(h). *See* 16 C.F.R. § 2.7(h).

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

taking steps to explore relevant topics by issuing supplemental process and taking testimony." Pet. Ex. 6 at 4.

Finally, Fully Accountable's claim that the Commission may not investigate its business practices as a whole because they are outside of the scope of investigation is unsupported and nonsensical. Pet. Ex. 4 at 7. To the extent an enterprise-wide practice of Fully Accountable relates "to the investigation," it is relevant and thus subject to compulsory process. *Invention Submission*, 965 F.2d at 1090. The Commission frequently investigates enterprise-wide practices; indeed, each of the Commission's resolutions in this case identify a potential enterprise-wide activity as a basis for an investigation.

### 3. Specifications 1 And 2 Are Not Unduly Burdensome.

Finally, Fully Accountable objects to specifications 1 and 2 as unduly burdensome. These specifications call for testimony about, respectively, the company's interrogatory answers and documents produced in response to the original 2017 CID. Fully Accountable claims this it is unreasonable to require the company to reproduce the same information in a different format. Pet. Ex. 4 at 8-9.

This objection is both unsupported and legally incorrect. As the Commission recognized, "the standard for establishing that a CID imposes an *undue* burden on the recipient is a high one." Pet. Ex. 6 at 5 (emphasis in original). A CID recipient must show that the CID "threatens to unduly disrupt or seriously hinder" its normal business operations. *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir, 1977) (*en banc*); *accord EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986).

FTC Memorandum of Points and Authorities in Support of Petition to Enforce Civil Investigative Demands

Fully Accountable's claim of burden presents only the conclusory assertion that complying with the CID will require its principals to take time away from their "day to day work." Pet. Ex. 4 at 9. This is not enough. *See, e.g., Texaco*, 555 F.2d at 882 (acknowledging that every CID presents some degree of burden). Indeed, the burden of providing this testimony should be modest, considering that Fully Accountable has already undertaken to gather and produce the underlying documents and interrogatory responses to the FTC. Nor would testimony about Fully Accountable's production of this information be duplicative. *See, e.g., M&T Mort. Corp.*, 235 F.R.D. at 24.

### C. Sarah Scava Has Improperly Withheld Responsive Information.

Unlike Fully Accountable, Ms. Scava did not file a petition to limit or quash the CID she received. She has thus failed to exhaust her administrative remedies and waived any challenge she might raise to the CID before this Court. Even if the Court were inclined to review the challenges raised by Elevated Health, they lack merit and provide no basis for denying enforcement.

### 1. Sarah Scava Is The Correct CID Recipient.

The Commission issued a CID to Sarah Scava—not to Elevated Health— seeking her testimony on 13 specified topics. The fact that Ms. Scava was the designated recipient of process is evident from the first page of the CID, as well as the accompanying cover letter from the Commission's Secretary. Pet. Ex. 3 at 1-2, 3. While Elevated Health attempted to file a petition to limit or quash this CID, the

Commission found that was improper because Elevated Health had no such right under the FTC Act and because Elevated Health had not met and conferred with staff as required by multiple FTC rules of practice. *See* Pet. Ex. 6 at 6 (citing 15 U.S.C. 57b-1(f)(1); 16 C.F.R. §§ 2.7(k), 2.10(a)(2)).

In a recent filing to this Court, Ms. Scava now claims that Elevated Health's petition was filed with the Commission on her behalf "because Elevated Health was Sarah Scava's company up and through December 2017 and because service was received at Elevated's last known address, not Sarah Scava's address." *See Fully Accountable I*, Doc. 21 at 19. Ms. Scava further claims that the objections raised in the Elevated Health petition were made for her benefit. *Id.* At no time, however, has any evidence supporting this proxy relationship between Ms. Scava and Elevated Health ever been presented by either of them to the Commission. *See, e.g.,* Pet. Ex. 1, ¶ 27 (Sarah Scava's counsel "had not informed us that she was representing Elevated Health in any of our conversations"). This newly-raised claim also runs counter to the statements in the petition itself which asserted—repeatedly and incorrectly—that the CID had been issued to *Elevated Health.* See, *e.g.,* Pet. Ex. 5 at 3, 4, 5.

Counsel for Ms. Scava also claims that the Commission's denial of the petition challenging the CID to Ms. Scava was improper because Ms. Scava is a third-party entitled to file such a petition and because counsel sufficiently identified herself as representing Sarah Scava. *See Fully Accountable I*, Doc. 21 at 19; Doc. 21-7 at 3. These arguments rest on a number of mistaken premises. To be clear, the

Commission denied the petition to quash from *Elevated Health* because *Elevated Health* was not the designated recipient of the CID—Ms. Scava was. Pet. Ex. 6 at 6. As discussed above, Ms. Scava did not file such a petition to quash. The Commission also denied the petition because *Elevated Health* failed to meet and confer the Commission's rules. *Id.* In its ruling, the Commission expressly noted that counsel identified herself as representing Sarah Scava. *Id.* However, at no time did any attorney representing *Elevated Health* identify themselves as such to Commission staff. *Id.*; Pet Ex. 1, ¶ 27.

These contradictory statements amount to nothing more than a self-serving shell game and only underscore the Commission's need for the specified testimony from Ms. Scava to untangle the relationships between and among these entities. They do not support any claim that Ms. Scava is not the actual CID recipient or that Elevated Health has any basis to object on her behalf.

### 2. Ms. Scava Waived Any Challenges To The CID By Failing To Raise Them Before The FTC.

Because Ms. Scava did not file a petition objecting to the CID, she has waived any challenge. It is a longstanding principle of law that a party must exhaust its administrative remedies before seeking relief in court. *McKart v. United States*, 395 U.S. 185, 193-95 (1965); *E.E.O.C. v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063 (5th Cir. 1979) ("Generally, one who has neglected the exhaustion of available administrative remedies may not seek judicial relief."). That principle applies fully to FTC compulsory process enforcement. *See, e.g., United States v. Morton Salt Co.*,

338 U.S. 632, 653-54 (1950); *American Motors Corp. v. FTC*, 601 F.2d 1329, 1332-37 (6th Cir. 1979); *FTC v. O'Connell Assocs., Inc.*, 828 F. Supp. 165, 168-70 (E.D.N.Y. 1993); *FTC v. Tracers Information Specialists, Inc.*, No. 8:16-mc-00018-VMC-TGW, 2016 WL 3896840, at *4 (M.D. Fla. June 10, 2016). The FTC has provided CID recipients with an administrative remedy to quash or narrow the request, *see* 16 C.F.R. § 2.10, and the failure to use that remedy thus waives any challenge to the CID. The "failure to comply with the administrative procedure provided by the statute and the implementing regulations bars . . . assertion of substantive objections to the CID in court." *Tracers*, 2016 WL 3896840, at *4; *see also O'Connell Assocs., Inc.*, 828 F. Supp. at 170.

The petition to quash presented to Commission regarding the CID issued to Ms. Scava stated that it was filed by "Non-Party Elevated Health, LLC." Pet. Ex. 5 at 1. Indeed, counsel's cover letter asked the Commission to "accept this filing as Non-Party Elevated Health, LLC's Petition to Quash or Limit" and then stated a second time that it enclosed a petition "for Elevated Health, LLC." *Id.* At no point did that petition state that it was filed by or on behalf of Ms. Scava. Because Ms. Scava failed to exhaust her remedies before the Commission, she may not now assert any such objections as a defense in this CID enforcement proceeding.

### 3. None Of Elevated Health's Objections To The CID Have Merit.

Even if Ms. Scava could somehow establish that Elevated Health's petition was filed on her behalf, this would still be unavailing because none of the claims present any reason to deny enforcement of the CID.

In its petition to the Commission, Elevated Health raised a number of objections to each specification that boil down to three basic claims: (1) the CID is unreasonable because Ms. Scava is no longer involved with Elevated Health or Fully Accountable, *see, e.g.*, Pet. Ex. 5 at 8; (2) the CID is unreasonable because it seeks information about entities and individuals outside of the scope of the investigation, *see id.* at 9, 10, 12-13, 15, 17, 18; and (3) the CID's requests for testimony are unduly burdensome and Sarah Scava should be permitted to respond in writing. *See id.* at 11-16, 18.

The fact that Ms. Scava claims to be no longer involved with Elevated Health and Fully Accountable provides no basis to refuse enforcement. At best, this claim suggests that Ms. Scava lacks more recent relevant information but, in light of the generous relevance standard afforded the Commission at this stage, the Commission is certainly entitled to ascertain what Ms. Scava knows and the state of her relationship to the companies. This is particularly true considering counsel's admission that "Elevated Health was Sarah Scava's company up and through December 2017[,]" *see Fully Accountable I*, Doc. 21 at 19, a period during which she

was also employed by Fully Accountable and Fully Accountable was subject to the FTC's original 2017 CID.

Nor does the CID seek information about individuals or entities outside of the scope of the investigation. As discussed above, the investigation is not limited to the Group A Entities and Group B Entities, but to individuals and entities related to them and to Fully Accountable. Pet. Ex. 3 at 5-6. Identifying which individuals and entities those may be, along with their relationships to Fully Accountable, is critical "to the investigation," and thus is relevant. *Invention Submission Corp.* 965 F.2d at 1090.

Finally, the claim that Ms. Scava should be permitted to respond to the Commission's questions in written form is easily refuted. In similar situations, courts have rejected requests to provide written responses in lieu of depositions. *See Great American Ins. Co. of New York v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (quoting *Marker*, 125 F.R.D. at 126). Nor is the FTC required to limit its investigation as Ms. Scava insists; to the contrary, the Commission has the discretion to deploy its investigational tools as it determines is necessary in the course of a given inquiry. *See, e.g., FTC v. Invention Submission Corp.*, No. MISC.89-272(RCL), 1991 WL 47104, at *3 n.23 (D.D.C. Feb. 14, 1991) ("Agencies have discretion to fashion how investigations are conducted."), *aff'd*, 965 F.2d 1086 (D.C. Cir. 1992). Moreover, given the deficiencies in Fully Accountable's original interrogatory responses—deficiencies that already led the Commission to seek

judicial enforcement once before—the Commission is well within its rights to decline to proceed by written answer now.

## III.  Conclusion

The Commission's CIDs meet the standards for enforcement of compulsory process. None of the claims asserted by Fully Accountable or Ms. Scava or any other party present any reason to deny enforcement. Thus, the Court should grant the Commission's petition to enforce the CIDs and enter an order requiring Fully Accountable, LLC, and Sarah Scava to appear and provide testimony on the specified topics within 10 days.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

JAMES REILLY DOLAN
Principal Deputy General Counsel

BURKE W. KAPPLER
Attorney

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel.: (202) 326-2043
Fax: (202) 326-2477
Email: bkappler@ftc.gov

Dated: February __, 2019