# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | **CASE NO**.   5:19-mc-00021 |
| | ) | |
| Petitioner, | ) | **JUDGE SARA LIOI** |
| | ) | Magistrate Judge George J. Limbert |
| | ) | |
| v. | ) | |
| | ) | |
| FULLY ACCOUNTABLE, LLC | ) | |
| and SARAH SCAVA | ) | |
| Respondents. | ) | |
| | ) | |

## RESPONDENTS' JOINT MEMORANDUM OF LAW
## IN OPPOSITION TO THE FTC'S PETITION
## TO ENFORCE CIVIL INVESTIGATIVE DEMANDS

**Table of Contents**

Table of Contents…………………………………………………………………………………..i

Table of Authorities………………………………………………………………………………..ii

I. Preliminary Statement……………………………………………………………..…………1

II. Factual Background………………………………………………………………………….3

III. Legal Argument……………………………………………………………...…………………5

    A. Specifications within the 2018 CIDs are not Reasonably Relevant to the Subject of the Investigation……………………………………………………………7

    Specifications 3 through 7 of the 2018 CID to Fully Accountable………………..8

    Specifications 3 through 13 of the 2018 CID to Sarah Scava………..…………..10

    B. Specifications in the 2018 CIDs seek information already in the FTC's Possession………………………………………………………………….……….11

    Specifications 1, 2, and 3 in the 2018 CID to Fully Accountable and Specifications 1 and 2 in the 2018 CID to Sarah Scava…………………………11

    C. The 2018 CIDs are Unduly Burdensome………………………………………..12

    D. Sarah Scava Exhausted Administrative Remedies and is Entitled to Object to the CID……………………………………………………………………...13

IV. Conclusion………………………………………………………………………………….14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Cross & Blue Shield v. Klein*,
  1997 U.S. App. LEXIS 17753 (6th Cir. July 11, 1997) .............................................................. 9

*In re Civil Investigative Demand 15-439*
  2016 U.S. Dist. LEXIS 107229 (W.D. Va. Aug. 12, 2016) ................................................. 6, 12

*FEC v. Comm. to Elect Lyndon La Rouche*,
  613 F.2d 849 (D.C. Cir. 1979) ................................................................................................. 6

*FTC v. Bisaro*,
  757 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................................... 11

*FTC v. Invention Submission Corp.*,
  296 U.S. App. D.C. 124, 965 F.2d 1086 (1992) .................................................................. 8, 9

*FTC v. Mt. Olympus Fin., L.L.C.*,
  2000 U.S. App. LEXIS 6915 (10th Cir. Apr. 17, 2000) ................................................ 6, 7, 10

*FTC v. O'Connell Assocs., Inc.*,
  828 F. Supp. 165 (E.D.N.Y. 1993) ........................................................................................ 13

*FTC v. Tracers Info. Specialists, Inc.*,
  No. 2016 U.S. Dist. LEXIS 96048 (M.D. Fla. June 10, 2016) .............................................. 13

*United States v. Anthem, Inc.*,
  2018 U.S. Dist. LEXIS 194460 (S.D.N.Y. Nov. 13, 2018) .................................................... 12

*United States* v. *Morton Salt Co.*,
  *338* U.S. 632 (1950) ..................................................................................... 5, 6, 7, 11

*United States v. Powell*,
  379 U.S. 48 (1964) ............................................................................................................ 6, 11

**Statutes**

15 USC § 45(a) ................................................................................................................................ 1

16 CFR § 2.7 (h) ........................................................................................................................... 11

FRCP 30(b)(6) .............................................................................................................................. 11

Federal Trade Commission Act Sections 5 and 12, 15 USC §§45 and 52 ..................................... 3

Respondents, by and through undersigned counsel, jointly oppose the Federal Trade Commission's Petition to Enforce Civil Investigative Demands.

I.     **PRELIMINARY STATEMENT**

The Federal Trade Commission ("FTC" or "Petitioner") seeks enforcement of the September 10, 2018 Civil Investigative Demands ("CIDs") that it issued to Respondent Fully Accountable, LLC. and to Respondent Sarah Scava, Fully Accountable's former employee.  It is important to note at the outset that the September 10, 2018 CIDs were not issued in furtherance of an investigation into deceptive or unfair trade practices under 15 USC §§ 45(a) and 52. Rather, they were issued -- as the FTC largely concedes -- to "explore" the extent to which Fully Accountable complied with the Court's August 13, 2018 Order compelling Fully Accountable to respond to a September 21, 2017 CID.[1]

After Fully Accountable provided documents and materials in compliance with the Court's August 13, 2018 Order, the FTC filed status reports regarding Fully Accountable's production.[2]  In those status reports, the FTC indicated it believed Fully Accountable's production was deficient.  The FTC did not, however, identify the purported deficiencies nor did the FTC contact Fully Accountable to discuss the purported deficiencies.  Rather, on September 10, 2018, the FTC issued a second CID to Fully Accountable and an initial CID to its former employee, Sarah Scava.[3]  In the Senturia Declaration annexed to the FTC's Petition *sub judice*, the FTC sets forth the purported deficiencies in Fully Accountable's response to the 2017 CID.[4] But, a plain review of these purported deficiencies reveals that the FTC received fulsome

---

[1] Dkt. 1-3, ¶ 15; Dkt. 1-1, p. 7; Dkt. 1-8, p. 4 of 6.
[2] Dkt. 1-3, ¶ 13, Dkt. 1-8, p. 4 of 6.
[3] Dkt. 1-4; Dkt. 1-5.
[4] Dkt. 1-3, ¶ 14

1

responses to the 2017 CID and that the FTC is merely taking issue with some of the earlier responses having been refined or supplemented after the Court's August 13, 2018 Order.

While the FTC is now arguing[5] that the September 10, 2018 CIDs were issued for the dual purpose of exploring compliance with the Court's Order *and* of continuing the investigation that prompted it to issue the September 21, 2017 CID, this position is belied by a plain review of the 2018 CIDs.[6] Indeed, the 2018 CIDs show that the FTC seeks information that the FTC either already has (due to Fully Accountable's compliance with the 2017 CID) or information that is not otherwise reasonably relevant to the underlying investigation.

Additionally, in evaluating whether to enforce the 2018 CIDs and in determining whether the 2018 CIDs impose an undue or unnecessary burden on Respondents, the nature and status of the underlying investigation should be considered. Here, a) Fully Accountable has already provided voluminous documents to the FTC; b) upon information and belief, the FTC is in the process of settling with some or all of the Group A entities; and c) the Group B entities are defunct or, in any event, have been non-operational since approximately 2016. Against this backdrop, and in keeping with the FTC's 2017 process-reform initiatives and its pledge to "improve transparency in investigations,"[7] the FTC should, at a minimum, explain whether the underlying investigation is actually ongoing or whether the FTC is merely harassing (and attempting to "make an example of") Fully Accountable and, by extension, Sarah Scava, for challenging the FTC in connection with issuance of the 2017 CID.[8]

---

[5] Dkt. 1-1, p. 7
[6] Dkt. 1-4; Dkt. 1-5.
[7] See https://www.ftc.gov/news-events/press-releases/2017/07/acting-ftc-chairman-ohlhausen-announces-internal-process-reforms
[8] Indeed, on March 6, 2019, FTC attorney Burke Kappler authored and posted an online article entitled "The FTC takes its subpoenas and CIDs seriously – and you should, too." In that article,

The FTC's CID authority is not limitless. Where information sought by way of a CID is neither relevant to an underlying investigation nor reasonable and where the information sought is already in the FTC's possession, the CID must be quashed. For these reasons, and as set forth in greater detail below (and in Fully Accountable's Petition to Quash and Limit[9]), the court should deny the FTC's Petition to Enforce Civil Investigative Demands.

## II. FACTUAL BACKGROUND

The FTC issued a CID to Fully Accountable on September 21, 2017. That 2017 CID indicated that the "Subject of Investigation" included:

> Whether Fully Accountable, the Group A Entities, or the Group B Entities, each as defined herein, and related entities and individuals, have made or participated in making, in any respect, false, misleading, or unsubstantiated representations in connection with the marketing of consumer products, in violation of Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"), 15 USC §§45 and 52, or have engaged in deceptive or unfair acts or practices by charging or participating in the charging, in any respect, for consumer products without consumers' authorization, in violation of Section 5 of the FTC Act, and whether Commission action to obtain monetary relief would be in the public interest. See also attached resolutions.[10]

The "attached resolutions" referenced in the "Subject of Investigation" include resolutions from 2009 and 2013, which pre-date Fully Accountable's existence by 5 years and 1 year, respectively. The third resolution is from 2016 and generically refers to, among other things, deceptive or unfair practices involving internet-related goods and services. The 2017 CID contained 11 Interrogatories (many of which have multiple subparts) and approximately 40 separate document requests.[11]

---

Mr. Kappler makes reference to Fully Accountable. See https://www.ftc.gov/news-events/blogs/competition-matters/2019/03/ftc-takes-its-subpoenas-cids-seriously-you-should-too
[9] See Docket Number 21 in the related case listed under docket number 5:18-mc-00054-SL.
[10] Exhibit 1, September 2017 CID issued to Fully Accountable.
[11] Id.

The FTC petitioned this Court to enforce the 2017 CID on or around June 6, 2018. Fully Accountable ultimately consented to compliance with the CID, and that consent was formalized by the Court on or about August 13, 2018 by way of an Order.[12] Thereafter, Fully Accountable complied with the CID and produced responses to Interrogatories and Document Requests.[13]

Following Fully Accountable providing documents and responses in compliance with the Court's August 13, 2018 Order, the FTC filed status reports regarding Fully Accountable's compliance. The FTC indicated that it believed Fully Accountable's production was deficient. The FTC did not, however, identify the purported deficiencies. Nor did the FTC contact Fully Accountable to discuss what the FTC believed to be deficient. Instead, on September 10, 2018, the FTC issued additional CIDs to Fully Accountable and to its former employee, Sarah Scava.[14]

The 2018 CID to Fully Accountable sets forth the same "Subject of Investigation" as the 2017 CID and cites the same general 2009, 2013, and 2016 resolutions. The 2018 CID calls for deposition testimony as to 7 topics, including:

1. All of the Company's responses to the Interrogatories set forth in the CID issued September 21, 2017.
2. All documents produced by the Company in response to the CID issued September 21, 2017.
3. All efforts made by the Company to locate information responsive to the CID issued September 21, 2017, including the identities of all individuals involved in those efforts.
4. All efforts made by the Company to prevent the destruction of documents that are in any way relevant to the investigation, as instructed in the CID issued September 21, 2017.

---

[12] Exhibit 2, August 2018 Order.
[13] Exhibit 3, September 21, 2018 Status Report from the FTC ("Fully Accountable made a production to the FTC on August 18, 2018 and separately provided a certificate of compliance dated August 23, 2018. FTC staff is still reviewing this production but does not agree at this time that Fully Accountable has complied in full. In the meantime, FTC staff has undertaken additional investigational steps to assess the completeness of the production and to move the matter forward generally.")
[14] Id.

4

     5.   The Company's information or records management systems, systems for electronically stored information, and any other issues relevant to compliance with the CID issued September 21, 2017.
     6.   All relationships between the Company and Elevated Health, LLC.
     7.   All relationships between the Company and Sarah Scava.[15]

The 2018 CID to Sarah Scava sets forth the same "Subject of Investigation" and cites the same general 2009, 2013, and 2016 resolutions. The 2018 CID to Sarah Scava calls for deposition testimony as to 13 topics, including:

1. You employment or other relationship with Fully Accountable, including all titles Fully Accountable gave you or that you used, and your compensation.
2. Work that you performed for Fully Accountable and its clients, including any work that you performed for any of the Group A Entities or Group B Entities.
3. The formation of Elevated Health.
4. The business of Elevated Health, including but not limited to, Elevated Health's business model and business practices, all sources of revenue and investment, and the disposition of funds.
5. Your role or roles with Elevated Health, and all income you received from Elevated Health.
6. Any other person's role or roles in connection with Elevated Health, including but not limited to Rachel Scava's role or roles in connection with Elevated Health.
7. All relationships between Elevated Health and Fully Accountable.
8. All relationships between Elevated Health and any of the Group A Entities or Group B Entities.
9. All relationships between Elevated Health and any of the following entities:
a. Scava Holdings, LLC.
b. CMG Tax & Consulting, LLC.
c. VEF International Inc.
d. TCWT Holdings, LLC.
10. All relationships between Elevated Health and any entity you know or understand to be connected directly or indirectly, with you, Rachel Scava, Christopher M. Giorgio, or Vincent Fisher.
11. Work that you performed for any of the Group A Entities or Group B Entities outside of the scope of your employment (or other relationship) with Fully Accountable, and all income you received from any of those entities.
12. Work that you performed for any of the following entities, and all income you received from any of them:
a. Scava Holdings, LLC.
b. CMG Tax & Consulting, LLC.
c. VEF International Inc.

---

[15] Dkt. 1-4.

5

      d.   TCWT Holdings, LLC.
13. Work that you performed, directly or indirectly, for any entity you understand to be connected directly or indirectly, with Rachel Scava, Christopher M. Giorgio, or Vincent Fisher, outside of the scope of your employment (or other relationship) with Fully Accountable, and all income you received from any such entities.[16]

On or about October 3, 2018, Fully Accountable timely filed a Petition to Quash or Limit the CID before the Federal Trade Commission.[17] On or about November 19, 2018, the Federal Trade Commission issued an Order Denying the Petition to Quash or Limit.[18] Similarly, on or about October 3, 2018, a Petition to Quash or Limit the CID directed to Sarah Scava was timely filed.[19] On or about November 19, 2018, the Federal Trade Commission issued an Order Denying the Petition to Quash or Limit with respect to the CID directed to Sarah Scava.[20]

### III.   LEGAL ARGUMENT

The standard for determining whether a CID should be quashed or limited was adopted by the United States Supreme Court in *United States* v. *Morton Salt Co.,* 338 U.S. 632 (1950). There, the Court enforced an FTC cease and desist order, which included a requirement that a corporation file reports with the FTC demonstrating its continued compliance with the cease and desist order. *Id.* at 634-636. The Court recognized that "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *Id.* at 652. Accordingly, the Court instructed that agency subpoenas or CIDs should not be enforced if it is determined that they demand information that is: (a) not "within the authority of the agency," (b) "too indefinite," or

---

[16] Dkt. 1-5.
[17] Dkt. 1-6.
[18] Dkt. 1-8.
[19] Dkt. 1-7.
[20] Dkt. 1-8.

6

(c) not "reasonably relevant to the inquiry." *Id.* Notably, in *FTC v. Mt. Olympus Fin., L.L.C.*, 2000 U.S. App. LEXIS 6915 (10th Cir. Apr. 17, 2000), the court enforced an FTC CID because, as it explained, "the documents requested were reasonably relevant to" the FTC's inquiry given that they were "clearly relevant to the investigation" and "could confirm or disprove specific allegations of wrongdoing" by the company being investigated.

Moreover, in *United States v. Powell,* 379 U.S. 48, 57-58 (1964), the United States Supreme Court held that in order for an agency to obtain enforcement of compulsory process, the information must "not already be within the agency's possession." Even if the FTC is able to satisfy this burden, enforcement of a CID may nevertheless be denied where the recipient of agency process demonstrates that enforcement would amount to abuse of the court's process, for example "if the summons had been issued for *an improper purpose*, such as to harass the [recipient of the summons] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58 (emphasis added); *accord*, *FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 864 (D.C. Cir. 1979). Additionally, an administrative subpoena or CID will not be enforced where it is shown to be unduly burdensome. *In re Civil Investigative Demand 15-439* 2016 U.S. Dist. LEXIS 107229 (W.D. Va. Aug. 12, 2016).

As set forth below, the 2018 CIDs issued to Respondents run afoul of these standards.

**A. Specifications within the 2018 CIDs are not Reasonably Relevant to the Subject of the Investigation**

In the case at bar, the 2018 CIDs issued to Fully Accountable and its former employee Sarah Scava are not reasonably relevant to the inquiry at hand and, even if respondents fully complied with the 2018 CIDs, compliance would neither confirm nor disprove any wrongdoing.

7

In its "Order denying Petitions to Limit and Quash Civil Investigative Demands,[21]" the FTC ostensibly acknowledged this fact, explaining: "FTC staff must be allowed latitude…particularly where, as here, a company has been lax in responding to the Commission's informational needs…".[22] The FTC also explained that because Fully Accountable "required the Commission to seek judicial intervention" for the 2017 CID, the FTC's requests "have particular relevance."[23] But this rationale is inconsistent with *Morton Salt Co.* and its progeny, including *FTC v. Mt. Olympus Fin., L.L.C.* There is no authority for the proposition that the FTC can issue CID after CID solely to evaluate the degree of compliance with earlier CIDs and regardless of whether the information sought has any bearing on the underlying investigation. Nor is there authority for the proposition that the FTC is necessarily afforded greater latitude in issuing supplemental CIDs simply because judicial intervention was necessary with respect to an earlier CID.

**Specifications 3 through 7 of the 2018 CID to Fully Accountable**

Specifications 3 through 5 of the CID issued to Fully Accountable are, on their face, not reasonably relevant to the underlying investigation. This is because answering deposition questions on these topics cannot conceivably advance the investigation as set forth in the "Subject of Investigation." At best, answers to these deposition questions might enable the FTC to determine the mechanics with respect to Fully Accountable's responses to the 2017 CID being refined or supplemented. Indeed, this appears to be the FTC's primary purpose in issuing the 2018 CID.

The FTC boldly asserts that any objection to Specifications 4 and 5 are "nonsensical" because the FTC frequently investigates "enterprise-wide practices" -- which is apparently a

---

[21] Dkt. 1-8.
[22] Id. at p. 5 of 8.
[23] Id.

euphemism for business practices unrelated to the underlying investigation.[24] And, in its "Order denying Petitions to Limit and Quash Civil Investigative Demands" the Commission explained that records management practices are "relevant in *any* investigation."[25] (emphasis in original). In both instances, the FTC cites generally to *FTC v. Invention Submission Corp.,* 296 U.S. App. D.C. 124, 965 F.2d 1086 (1992). But in that case, the court did not hold that the FTC has free reign to investigate any "enterprise-wide practices" or that certain types of materials are always relevant in any investigation. Rather, the court held that the FTC's request for financials was reasonably relevant to the pending investigation because: "Comparison of ISC's profits with those of other invention promotion companies, and of the revenues of the corporation's various regional sales offices with one another, for example, might help the Commission to allocate its limited investigative resources to protect the largest number of consumers from potential harm, as sales offices that used fraudulent techniques but generated little or no profit would likely be closed even without government intervention." Id. at 1090.

In contrast to *Invention Submission Corp.,* where the court held that a company's profits were demonstrably relevant to the underlying investigation, here information about Fully Accountable's records management systems and document retention policies have no relevance to the investigation, which is focused on whether Fully Accountable or the Group A or B entities made misrepresentations in connection with the marketing of consumer products or whether consumers were charged without authorization.

With respect to Specifications 6 through 7, the FTC ostensibly concedes that it is not inquiring into "all relationships between [Fully Accountable] and Elevated Health, LLC" and

---

[24] Dkt. 1-1, p. 21 of 28.
[25] Dkt. 1-8, p. 6 of 8.

9

"all relationships between [Fully Accountable] and Sara Scava" because these topics are somehow relevant to the underlying investigation. Rather, the FTC is inquiring into these relationships because, as set forth in the Senturia Declaration annexed to the FTC's Petition, the FTC believes Sarah Scava should have been disclosed by Fully Accountable in an organizational chart it produced in July 2018, and the FTC knows that Sarah Scava formed Elevated Health, LLC in 2016.[26] Notably, neither Sarah Scava nor Elevated Health were the subjects of the September 21, 2017 CID, and Elevated Health is not identified as a Group A entity or a Group B entity in the "Subject of Investigation."[27]

The FTC points to the investigational resolutions which provide authority to investigate "unnamed persons, partnerships, or corporations." But this authority is not unlimited and does not entitle the FTC to issue CID after CID merely to explore the extent to which Fully Accountable complied with earlier CIDs and irrespective of whether there is any relevance to the underlying investigation. See e.g. *Blue Cross & Blue Shield v. Klein,* 1997 U.S. App. LEXIS 17753, at *10 (6th Cir. July 11, 1997) (explaining that in issuing CIDs, the government does not have "license to pursue documents not relevant to its investigation.").

Further, the court should not countenance the FTC's argument that they are authorized to cast about for information regarding relationships with Elevated Health, Scava Holdings, LLC. CMG Tax & Consulting, LLC, VEF International, Inc., and TCWT Holdings, LLC., simply because the "Subject of Investigation" includes the catchall provision "unnamed, person, partnerships, or corporations." First, under this rationale, the FTC, would be able to issue specifications as to any topic at all if the "Subject of Investigation" including the phrase "among

---

[26] Dkt. 1-3, ¶14 (a).
[27] Exhibit 1, September 2017 CID.

10

other things," an absurd result. Second, the FTC should be precluded from using catchall provisions to conduct a fishing expedition as to any and all entities, irrespective of how attenuated their connection is to Fully Accountable. And third, given the FTC's admission that the 2018 CIDs were issued for the primary purpose of exploring purported deficiencies in the 2017 responses, the FTC should not be given latitude to cast such a wide net.

**Specifications 3 through 13 of the 2018 CID to Sarah Scava**

As set forth above, Elevated Health is not a Group A or Group B entity and so Elevated Health's formation, business activities, and relationships, and Sarah Scava's role within Elevated Health are not topics that are reasonably relevant to the underlying investigation. Clearly, answering questions on these topics could not "confirm or disprove specific allegations of wrongdoing" by the company being investigated. See *Mt. Olympus Fin., L.L.C.*, supra 2000 U.S. App. LEXIS 6915 at \*6. Moreover, specifications (9 and 12) pertain to additional entities (i.e. Scava Holdings, LLC., CMG Tax & Consulting, LLC, VEF International, Inc., and TCWT Holdings, LLC.) that are not Group A or Group B entities. As set forth above, the FTC's reliance on the catchall provision should not be permitted, particularly given its admission about its primary purpose in issuing the 2018 CIDs.

**B. Specifications in the 2018 CIDs seek information already in the FTC's Possession**

In its Petition, the FTC focuses on whether Respondents' testimony would be relevant to the FTC's investigation. But, even if relevant, under *Powell* the FTC must also show that the information is not already in its possession. *Powell*, 379 U.S. at 57-58. See also *FTC v. Bisaro*, 757 F. Supp. 2d 1, 7 (D.D.C. 2010) ("if it is clear that the agency already possesses the information it seeks, the Court may find the agency is abusing its process by acting in bad faith or with an improper purpose.")

11

**Specifications 1, 2, and 3 in the 2018 CID to Fully Accountable and Specifications 1 and 2 in the 2018 CID to Sarah Scava**

Given the documents already provided, any testimony as to Specifications 1, 2, and 3 in the Fully Accountable CID and as to Specifications 1 and 2 in the Sarah Scava CID would be needlessly duplicative.[28] The FTC does not substantively address this argument in its brief, but rather cites inapposite cases pertaining to whether a litigant in a civil suit can avoid having to submit to an FRCP 30(b)(6) deposition. There is no basis for requiring Respondents to submit to depositions simply so they can provide testimony on topics that were already fully addressed in response to the 2017 CID. Unlike a 30(b)(6) deposition, which occurs within the context of active litigation and to which a party is generally always entitled, testimony pursuant to 16 CFR § 2.7 (h) is dependent on meeting the requirements enunciated in *Morton Salt* and *Powell*. And here, given that the information the FTC seeks is already in its possession by virtue of responses to the 2017 CID, testimony pursuant to 16 CFR § 2.7 (h) is not warranted.

**C. The 2018 CIDs are Unduly Burdensome**

A CID can be quashed or limited when it is "unnecessarily burdensome." *United States v. Anthem, Inc.,* 2018 U.S. Dist. LEXIS 194460, at *25-26 (S.D.N.Y. Nov. 13, 2018). Here, in assessing burdensomeness, the court need not only evaluate the scope of the particular information called for within the specifications at issue in the 2018 CIDs or the direct economic impact on Respondents, but also the amount of information that Respondents have already provided to the FTC. For instance, in *In re Civil Investigative Demand 15-439,* 2016 U.S. Dist.

---

[28] Exhibit 3, September 21, 2018 Status Report from the FTC ("Fully Accountable made a production to the FTC on August 18, 2018 and separately provided a certificate of compliance dated August 23, 2018…")

LEXIS 107229, at *21-22 (W.D. Va. Aug. 12, 2016), the court held as follows in assessing a CID's burdensomeness:

> [Respondent] argues, and the court agrees, that the government's CID must be considered in the context of the lengthy and wide-ranging investigation that has already transpired. Given the scope of the government's investigation, the vast amount of information already in the government's possession by virtue of the search warrant and voluntary production, and the breadth of the pending CID, it may well be that it would be unduly burdensome for [respondent] to comply…

Here, a) Fully Accountable has already provided voluminous documents to the FTC;[29] b) upon information and belief, the FTC is in the process of settling with some or all of the Group A entities; and c) the Group B entities are defunct or, in any event, have been non-operational since approximately 2016. Accordingly, the court need not confine its burdensomeness analysis to man-hours, compliance costs and expenses, or economic impact. Rather, it can assess whether, given the history of the investigation, enforcing the CIDs would impose an undue burden on Fully Accountable, and by extension its former employee, by requiring oral testimony on topics already addressed through compliance with an earlier CID or on topics unrelated to the underlying investigation. The FTC should, at a minimum, explain whether the underlying investigation is actually ongoing or whether the FTC is merely harassing Fully Accountable and Sarah Scava, because of the need for judicial intervention following issuance of the 2017 CID.

### D. Sarah Scava Exhausted Administrative Remedies and is Entitled to Object to the CID

The FTC's argument that Sarah Scava did not exhaust administrative remedies is disingenuous, at best. The facts are clear. After initial ambiguity as to whether the FTC had issued a CID to Sarah Scava personally or to Sara Scava as a designee of Elevated Health, LLC.,

---

[29] Id.

13

counsel Rachel Scava -- who the FTC knew to be representing Sara Scava -- timely filed a Petition to Quash or Limit the Scava CID.[30] The Petition was filed by petitioner Elevated Health, LLC., which was also represented by Rachel Scava.[31] And, the Petition followed a meet-and-confer (as to the Scava CID) between Rachel Scava and the FTC.[32] So, given that counsel for Sarah Scava and Elevated Health, LLC filed a Petition to Quash or Limit the Scava CID following a meet and confer, Sarah Scava has indeed exhausted administrative remedies.

None of the cases cited by the FTC support the argument that Sarah Scava failed to exhaust administrative remedies. See *FTC v. Tracers Info. Specialists, Inc.,* No. 2016 U.S. Dist. LEXIS 96048, at *5 (M.D. Fla. June 10, 2016) (Respondent objected to the CID "on the grounds that the demands were overly burdensome, irrelevant, and/or sought confidential and proprietary information. [Respondent], however, did not file a petition to limit or quash the CID, or seek additional time to do so."); *FTC v. O'Connell Assocs., Inc.,* 828 F. Supp. 165, 168 (E.D.N.Y. 1993) (rejecting respondents argument that if they choose not to comply with a CID, they have the option of either bringing a petition to limit or quash before the FTC *or* filing an answer, with objections, and waiting for the FTC to bring an enforcement proceeding in district court.)

Accordingly, the Commission's failure to consider the Petition to Quash or Limit as to the Scava CID was patently incorrect.

---

[30] Dkt. 1-7.
[31] Id.
[32] Dkt. 1-3, ¶ 24-25 ("I received an email from Rachel Scava indicating that she had received the 2018 Sarah Scava CID from Sarah Scava. Rachel Scava also confirmed that she was representing Sarah Scava for purposes of the CID issued to Sarah...Rachel requested that the Commission modify the 2018 Sarah Scava CID…During follow-up calls regarding the 2018 Sarah Scava CID, we offered to negotiate…[but] Rachel Scava continued to request that the Commission modify the 2018 Sarah Scava CID…")

## IV. CONCLUSION

For the foregoing reasons, Respondents respectfully assert that the Court should deny the FTC's Petition to Enforce Civil Investigative Demands, and the 2018 CIDs must be quashed.

DATED: March 22, 2019

| | |
|---|---|
| /s/Gregory P. Barwell<br>Gregory P. Barwell<br>Bar Number: 0070545<br>*Wesp Barwell LLC*<br>100 E Broad Street, Suite 2350<br>Columbus, Ohio 43215<br>Phone and Fax: (614) 456-0488<br>Email: gbarwell@wesplaw.com<br>***Attorney for FULLY ACCOUNTABLE, LLC.*** | /s/ Rachel L. Scava<br>Rachel L. Scava<br>Bar Number: 0092694<br>Fully Accountable, LLC.<br>2680 West Market St.<br>Akron, Ohio 44333<br>T: (216) 810-4705<br>F: (234) 542-1029<br>rachel.scava@fullyaccountable.com<br>***Attorney for SARAH SCAVA*** |

/s/ Joseph Lipari
Joseph Lipari
Bar Information: Admitted *Pro Hac Vice*
Sultzer Law Group, P.C
14 Wall Street, 20th Floor
New York, New York 10005
T: (212) 618-1938
F: (888) 749-7747
liparij@thesultzerlawgroup.com
***Attorney for FULLY ACCOUNTABLE, LLC.***