IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Petitioner, <br><br> v. <br><br> **FULLY ACCOUNTABLE, LLC,** and <br><br> **SARAH SCAVA,** <br><br> Respondents. | Misc. No. 5:19-mc-00021-SL |

**FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS**[1]

The Federal Trade Commission has asked this Court to enforce two civil investigative demands (CIDs) and to order respondents Fully Accountable, LLC, and Sarah Scava to appear and provide testimony within ten days.

---

[1] This document contains references to material formerly under temporary seal. As provided by the Court's Order granting the FTC's Motion for Temporary Seal, respondents had ten days to file a motion seeking a permanent seal of the information redacted by the FTC. *See* Doc. 10 at 2-3. (Citations to page numbers in docket entries are to those in the ECF-added headers.) Respondents elected not to do so. Accordingly, the temporary seal has expired and the Court may restore that information to the public record.

These CIDs represent the latest stage in the FTC's ongoing investigation of Fully Accountable, LLC. After Fully Accountable failed to respond fully to an initial civil investigative demand, the FTC sought and obtained a court order enforcing that CID. The company then produced some additional information, but those responses, too, proved incomplete and deficient. To understand Fully Accountable's shifting responses and further investigate, the FTC then issued CIDs for testimony to the company and to Sarah Scava, a key former employee.

Fully Accountable and Ms. Scava have refused to comply with those CIDs. None of their submitted reasons for noncompliance has legal or factual merit, and none undermines the FTC's showing that these CIDs satisfy the longstanding test for enforcement: they are within the agency's authority, call for information reasonably relevant to the investigation, and are neither indefinite nor unduly burdensome. Moreover, in seeking testimony to follow up on omissions and deficiencies in a document production, the FTC followed a standard and accepted path for fact-finding in governmental investigations and, more generally, civil discovery. Respondents' arguments, if credited, could hamper such legitimate investigational avenues. For this reason, too, this Court should affirm the FTC's approach and enforce the CIDs.

**Argument**

I.    **The Facts Confirm The FTC's Need For The Testimony In Question.**

Since its inception, this investigation has focused on Fully Accountable and related individuals and entities, as the FTC seeks to determine whether their conduct involving the Group A Entities, the Group B Entities, or other related

entities or individuals violates the law.² The FTC has described the nature and scope of that investigation to Fully Accountable and Sarah Scava in no fewer than three identical "Subject of Investigation" statements, one with each CID issued. *See*, *e.g.*, Doc. 1-1 at 4; Doc. 1-4 at 6-7; Doc. 1-5 at 6-7.

The FTC commenced this investigation in 2017, when it issued its first CID to Fully Accountable. *See Federal Trade Commission v. Fully Accountable, LLC*, Misc. No. 5:18-mc-00054-SL (N.D. Ohio), Doc 1, ¶ 13 [hereinafter "*Fully Accountable I*"]. The company produced some information in response to the CID and certified to the FTC that its response was complete. The FTC disputed that Fully Accountable's 2017 production was complete for several reasons, including that the production did not include any documents whatsoever. *Id.*, ¶¶ 18-20. After multiple attempts to confer with Fully Accountable proved fruitless, *see*, *e.g.*, *Fully Accountable I*, Docs. 1-5 to 1-7 (correspondence with Fully Accountable), the FTC sought judicial enforcement and in August 2018 obtained an order directing Fully Accountable to comply with its CID.³ *Fully Accountable I,* Doc. 14.

As a result of that proceeding, Fully Accountable disclosed more information to the FTC, a production it now claims "refined and supplemented" its original production. *See* Respondents' Joint Memorandum of Law in Opposition to the FTC's

---

² As we have previously described, the "Group A Entities" consist of a collection of firms that marketed various health-related supplements online. The "Group B Entities" marketed similar products but, unlike most of the Group A Entities, also appear to be related to Fully Accountable. Fully Accountable provided "back office" services to both groups. *See* Doc. 1-1 at 3.

³ Though it refused to comply with the original CID until the FTC brought its enforcement action, Fully Accountable did not oppose the FTC's petition to enforce and asserted no objections to any aspect of the CID in that action.

Petition to Enforce Civil Investigative Demands, at 5 [hereinafter "Opp."]. With this "supplemented" production, the company also provided the FTC a second certificate attesting it had complied with the FTC's 2017 CID. *See* Declaration of Harris A. Senturia (Feb. 1, 2019), Doc. 1-3, ¶ 13 [hereinafter "Senturia Dec."].

Contrary to Fully Accountable's characterization, however, this "supplemented" production substantially altered its initial production and raised serious questions about the veracity of its certificates of compliance. Among other things, Fully Accountable:

- Identified for the first time a key employee—Sarah Scava—that both certified productions had inexplicably omitted. In a revealing disclosure, Fully Accountable admitted that Ms. Scava formerly worked for the company—but did so only *after* the FTC had issued a CID to Ms. Scava;

- Disclosed for the first time that all or nearly all of the Group B Entities were not separate third parties to Fully Accountable, but rather were affiliates under the common control of Fully Accountable's own officers;

- Identified some staff members responsible for specific accounts, even though Fully Accountable previously certified to the FTC that this information was unavailable;

- Provided documents related to payment processing activities, even though Fully Accountable previously certified to the FTC it had no such information; and

- Disclosed for the first time that Fully Accountable no longer possessed certain types of responsive information, even though it previously indicated to the FTC that it possessed the information and certified to the FTC that no documents had been "destroyed, mislaid, transferred, deleted, or overwritten."

*Id.*, ¶ 14.[4]

---

[4] Respondents do not dispute these facts. Under the Court's Order to Show Cause, *see* Doc. 12 at 2, they and any other undisputed allegations are deemed admitted.

Inconsistent disclosures and omissions such as these, including "supplemented" statements flatly at odds with its certificate and earlier representations, led the FTC to issue the CIDs now before the Court. Specifically, the FTC sought testimony from Fully Accountable and Ms. Scava because of the difficulty it experienced in eliciting straightforward and consistent responses to the document requests and interrogatories in the original 2017 CID. *Id.*, ¶ 15. Given this history, staff chose the more "direct and efficient" option of seeking testimony from Fully Accountable and Ms. Scava. *Id.*

## II. The CIDs Seek Relevant Information.

The standard for relevance in administrative investigations such as this one is broad and flexible. A CID's requests need only be "reasonably relevant" to the investigation. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992); *accord United States v. Markwood*, 48 F.3d 969, 977 (6th Cir. 1995) (citing *Morton Salt*, 338 U.S. at 652). This relevance requirement is "not especially constraining" and is satisfied "[s]o long as the material requested 'touches a matter under investigation.'" *EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 142-43 (2d Cir. 2009) (Newman, J., concurring); *Sandsend Fin. Consults., Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (quoting *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982)). The investigating agency bears no obligation at this stage to tie the information sought to specific charges or a particular theory of violation. *Invention Submission*, 965 F.2d at 1090. Importantly, courts should defer to an agency's own determination of relevance. *Id.* at 1089; *accord FTC v. Texaco, Inc.*,

555 F.2d 862, 877 n.32 (D.C. Cir. 1977) (*en banc*) (holding that the FTC's determination of relevance should be accepted if not "obviously wrong"). To that end, the CID recipient bears the burden to disprove the relevance of a given request for information. *Invention Submission*, 965 F.2d at 1090 (citing *Texaco*, 555 F.2d at 882). Fully Accountable and Ms. Scava fail to meet that burden here.

To begin, respondents are wrong in suggesting that relevance in this context means only information that could "confirm or disprove specific allegations of wrongdoing." Opp. at 10, 14 (citing *FTC v. Mt. Olympus Fin. L.L.C.*, No. 99-4099, 211 F.3d 1278, *2 (10th Cir. 2000)). *Mt. Olympus* simply held that information that confirmed or disproved a specific allegation was "clearly relevant;" it did not hold that this is the only relevance test. 211 F.3d 1278, *2. Nor does the case displace the well-developed law described above defining reasonable relevance.

Fully Accountable and Ms. Scava also err in arguing that there is a distinction, in terms of relevance, between CIDs issued to explore compliance and CIDs issued to develop new information for this investigation. Opp. at 10-11. The former, they claim, are not relevant and thus outside of the FTC's authority to enforce. *Id.* at 11. This distinction is illusory because the information subject to the 2017 CID, the Court's Order, and the 2018 CIDs all arises from—and thus is relevant to—the same ongoing investigation. Indeed, the Commission issued the 2018 CIDs for testimony in large part to get straight answers to questions it has been asking since 2017.

Turning to specific requests in the CIDs, respondents argue that specifications 3-5 in the CID to Fully Accountable call for irrelevant information

- 6 -

because they ask about "business practices unrelated to the underlying investigation." Opp. at 11-12. But it is certainly relevant "to the investigation" if information that was otherwise responsive to the 2017 CID is no longer available because of poor or opportunistic document management policies or practices by Fully Accountable. The company's flip-flopping certifications particularly call these practices into question.

Respondents rely on *Invention Submission*, Opp. at 12, but that case actually supports the FTC's position and confirms the wide scope of reasonable relevance. In that case, the D.C. Circuit found that information about Invention Submission's profits was relevant "to the investigation" *not* because it helped prove the company's liability but because it helped FTC staff "allocate [their] limited investigative resources." *Invention Submission*, 965 F.2d at 1090. If such information going to the investigation as a procedural matter can be relevant, then the information requested here—which goes directly to whether Fully Accountable and Ms. Scava possess responsive information—is certainly relevant, too.

Respondents also challenge specifications 6-7 in the CID to Fully Accountable that ask about Elevated Health LLC or Ms. Scava, claiming that neither of these are Group A or Group B Entities within the "Subject of Investigation" description. They also claim that Ms. Scava is only a target of the FTC's investigation because of her omission from Fully Accountable's initial response. Opp. at 12-13. These arguments ignore the plain language of the "Subject of Investigation" statement, which informs Fully Accountable and Ms. Scava that the FTC is investigating "Fully Accountable, the Group A Entities, the Group B Entities . . . *and related*

*entities and individuals*." Doc. 1-4 at 6 (emphasis added). Thus, even if Elevated Health and Sarah Scava were not among Group A or Group B Entities, they would still be within the scope of the investigation as "related entities or individuals." Indeed, identifying exactly what individuals and entities are related to Fully Accountable and how they are related has proved a key element of this investigation.

Respondents do not address the "Subject of Investigation;" instead, they pivot to the term "unnamed persons, partnerships, and corporations" used in the FTC's resolutions. Opp. at 13. This "catchall" language, they assert, amounts to an impermissible "fishing expedition" and prevents the Commission from asking about other entities, including Scava Holdings, LLC, CMG Tax & Consulting, LLC, VEF International, Inc., and TCWT Holdings, LLC. *Id.* at 13-14. But respondents fail to show, as they must to prevail here, that the Commission's request for this information is irrelevant. *Invention Submission Corp.*, 965 F.2d at 1090; *see also FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 85 (D.D.C. 2010), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011). They do *not* deny, for instance, that these companies are "related entities or individuals." Indeed, a disclaimer of relationship would be questionable considering that some of these entities bear the names or initials of Fully Accountable's officers Rachel Scava, Chris Giorgio, and Vincent Fisher.[5] Also, since the FTC is not required to tie the information requested to specific charges or a particular theory of violation, *see Invention Submission*, 965 F.2d at 1090, such

---

[5] *See* Senturia Dec., ¶ 14.e.

generality is permitted and acceptable in administrative investigations. Respondents' premise—that the FTC can only seek information about entities that it already has sufficient information to name—cannot be squared with these authorities and would hinder agency fact-finding.

### III. The CIDS Seeking Testimony Do Not Duplicate The 2017 CID.

Respondents next claim that specifications 1-3 in the CID to Fully Accountable and specifications 1-2 in the CID to Sarah Scava request information they have "already provided[,]" a problem they assert the FTC "does not substantively address." Opp. at 14-15. But, in fact, the FTC did address this point in its memorandum, citing multiple cases holding that testimony about a document provides information distinct from the document itself. *See* Doc. 1-1 at 20 ("Similarly, the availability of an informative document . . . is not the equivalent of corporate testimony regarding the subject matter of that document.") (quoting *United States ex rel. Fago v. M&T Mort. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006)). This alone refutes respondents' argument.

Nor are respondents correct that they have fully complied with the original CID. As described above, their compliance remains an open question. After all, Fully Accountable maintained it had "fully addressed" the Commission's original CID right up to commencement of the previous enforcement action, after which Fully Accountable then "revised and supplemented" its submissions, certified the new responses as complete, then supplemented them yet again after receiving the CIDs for testimony. Given this history, the FTC justifiably seeks to test and explore

through testimony the information Fully Accountable has provided so far. *See*, *e.g.*, Doc. 1-1 at 20-21 (citing cases regarding depositions about document submissions).

### IV. The CID Does Not Impose An Undue Burden.

The standard for proving that a CID presents an undue burden is well-established: a process recipient must show that the CID "threatens to unduly disrupt or seriously hinder normal operations of a business." *Texaco,* 555 F.2d at 882 & n.52; *accord In re Civil Investigative Demand 15-439*, No. 5:16-mc-3, 2016 WL 4275853, *7 (W.D. Va. Aug. 12, 2016) (citing *Texaco*, 555 F.2d at 882; *NLRB v. Carolina Food Processors, Inc.*, 81 F.3d 507, 513 (4th Cir. 1996)). Fully Accountable and Ms. Scava do not even attempt to show how two CIDs that seek only testimony rise to this level.

Instead, relying on *In re Civil Investigative Demand 15-439*, respondents argue for a new standard in which the court considers the context and history of the investigation, the information already available to the government, and the breadth of the pending CID. Opp. at 16. Respondents claim that because they have already produced "voluminous" documents, because they say the FTC is settling a separate law enforcement case with some Group A Entities, and because they say that the Group B Entities are "defunct," the CIDs are unduly burdensome. Opp. at 15-16. None of these arguments has merit.

First, *In re Civil Investigative Demand 15-439* provides no support to respondents. The facts of that case differ markedly from this one; unlike here, that investigation had been ongoing for over six years and the government had already collected a "vast amount" of information from the respondent. *See In re Civil*

- 10 -

*Investigative Demand 15*-439, 2016 WL 4275853, *7. Moreover, the court there did not announce a new rule; indeed, it cited *Texaco*. *Id*. The court simply restated the law that reproduction of information already possessed by the government might be unduly burdensome. *Id.* But, as discussed above, that is not the circumstance here.

Second, respondents' "facts" supporting their claim of burden are without basis. Fully Accountable's production was not "voluminous;" it totaled a mere 571 pages. Doc. 1-6 at 6. And whatever the status of the Group A or Group B Entities, that does not affect *this* investigation into conduct that *Fully Accountable* and its related individuals and entities have undertaken.

Stretching further, respondents claim that the FTC is "harassing" them and they allude to an improper purpose. Opp. at 10, 16. This claim, a throwaway at best, rests on nothing more than their demonstrably-insufficient burden argument—because that fails, so does this.[6] Nonetheless, even a passing review of the record shows no basis for any claim of harassment from any of the FTC's actions. The FTC has unanswered questions about respondents' business conduct; the fact that respondents would rather not answer them does not transform those questions into harassment.

---

[6] Moreover, respondents have waived this claim by failing to raise it in either of their petitions to the Commission. *FTC v. Tracers Information Specialists, Inc.*, No. 8:16-mc-00018-VMC-TGW, 2016 WL 3896840, at *4 (M.D. Fla. June 10, 2016); *FTC v. O'Connell Assocs., Inc.*, 828 F. Supp. 165, 168-70 (E.D.N.Y. 1993).

## V. Sarah Scava Did Not Exhaust Her Administrative Remedies.

Finally, Ms. Scava claims that because her counsel also represented non-party Elevated Health LLC, and because this was known to the FTC, Elevated Health's petition to quash her CID should be deemed to be her petition to quash. Opp. at 16-17. This argument is meritless.

The petition to quash filed with the FTC by Elevated Health could not have been clearer that it was filed for Elevated Health and only for that entity. *See* Doc. 1-7. The cover letter from its counsel Rachel Scava (Doc. 1-7 at 2), the cover page of the petition (Doc. 1-7 at 3), and the very first sentence of the petition itself all identified the sole petitioner as Elevated Health. Doc. 1-7 at 4. Indeed, the petition itself describes plainly how Elevated Health saw its relationship to Ms. Scava. Elevated Health asserted (despite the plain language of the CID) that it was the CID recipient and that Ms. Scava was only the intended witness:

> [T]he FTC issued Elevated a CID designating Sarah Scava ("Scava") as the representative by whom the FTC was requiring to provide oral testimony on the Investigational Hearing Topics listed in the CID.

Doc. 1-7 at 5.[7] Further signaling that Elevated Health was responding only for itself, its petition to quash unambiguously stated that Ms. Scava is "not involved in Elevated [Health]." Doc 1-7 at 4.

---

[7] This sentence errs twice. First, it mistakes the actual CID recipient: Sarah Scava. Second, the Commission is not authorized to designate a witness on behalf of an entity providing testimony under Rule 2.7(h), 16 C.F.R. § 2.7(h). Under that Rule, "*the entity* must designate one or more officers, directors, or managing agents, or designate other persons who consent, to testify on its behalf." *Id.* (emphasis added).

- 12 -

Indeed, Ms. Scava's present arguments only confirm why her testimony is necessary: because the information provided to date indicates that Fully Accountable and its affiliates, including Ms. Scava, use written responses as a kind of "shell game" to their advantage. This is but one example of respondents' approach.[8] Sarah Scava filed no petition of her own with the Commission, while Elevated Health's filing disavowed that Ms. Scava was a recipient of the CID or was involved with that entity. *See, e.g.*, Doc. 1-7 at 4-5. Now, before this Court, Ms. Scava reverses course and claims a relationship with Elevated Health in an effort to avoid waiver. These tactical games are precisely why the Commission wants the opportunity to ask direct questions of Fully Accountable and Ms. Scava under oath.

Finally, the Commission explicitly ruled that even if it were to consider Elevated Health's petition on the merits, it still would reject the petition. *See* Doc. 1-8 at 8. That petition raised essentially three arguments against the testimony, some of which Fully Accountable and Ms. Scava have reasserted here. The Commission properly rejected those arguments, for the reasons addressed above. *Id.* Respondents provide no reason to disturb the Commission's judgment.

## Conclusion

For the reasons stated above, this Court should enforce the CIDs and issue an order directing respondents to appear for testimony within 10 days.

---

[8] For others, see Argument I., at 3-4 *supra*; *see also* Senturia Dec., ¶ 14.

                                                Respectfully submitted,

                                                ALDEN F. ABBOTT
                                                General Counsel

                                                JAMES REILLY DOLAN
                                                Principal Deputy General Counsel

                                                MICHELE ARINGTON
                                                Assistant General Counsel for Trial Court Litigation

                                                */s/ Burke W. Kappler*
                                                BURKE W. KAPPLER
                                                Attorney

                                                FEDERAL TRADE COMMISSION
                                                600 Pennsylvania Ave., N.W.
                                                Washington, DC 20580
                                                Tel.: (202) 326-2043
                                                Fax: (202) 326-2477
Dated: April 5, 2019                    Email: bkappler@ftc.gov

**Certificate of Service**

I hereby certify that on April 5, 2019, I served the foregoing Reply in Support of Petition for Enforcement of Civil Investigative Demands upon Gregory Barwell and Joseph Lipari, counsel for Respondent Fully Accountable, LLC, by filing it with the CM/ECF system for the Northern District of Ohio, which provides a notification to all counsel appearing in this matter.

I further certify that on April 5, 2019, I served the foregoing Notice of Service and accompanying exhibits upon Rachel Scava, counsel for Respondents Fully Accountable, LLC, and Sarah Scava by e-mail to

rachel.scava@fullyaccountable.com.

*/s/ Burke W. Kappler*
BURKE W. KAPPLER